**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1242-WJM-KMT

WALTER STRICKLIN,

    Plaintiff,

v.

BROCK BORDELON, M.D.,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION TO LIMIT
DEFENDANT'S EXPERT OPINIONS PURSUANT TO F.R.E. 702**

---

    This medical negligence lawsuit arises from injuries sustained by Plaintiff Walter Stricklin after he fell from an operating room table during surgery performed by Defendant Brock Bordelon, M.D.  (ECF No. 1 ¶¶ 51–56.)

    This matter is before the Court on Plaintiff's Motion to Limit Defendant's Expert Opinions Pursuant to F.R.E. 702 ("Motion"), filed on March 12, 2021.  (ECF No. 72.)  Defendant responded on March 22, 2021.  (ECF No. 74.)  For the reasons explained below, the Motion is denied.

## I. BACKGROUND

    On April 3, 2020, Defendant served his Initial Expert Disclosures under Federal Rule of Civil Procedure 26(a)(2), disclosing three experts in general surgery, Kian A. Modanlou, M.D.; William C. Chambers, Jr., M.D.; and John Conn, M.D.  (ECF No. 72-1 at 3, 12–15.)

**A.     Dr. Modanlou**

Dr. Modanlou was designated as an "expert i[n] general surgery and is expected to testify in his area of expertise." (*Id.* at 3.) In his expert report, he opines, *inter alia*:

- With every surgical procedure, the entire operating room team has a responsibility for the safety and security of the patient during the perioperative period which includes, but is not limited to, the positioning and securing of the patient on the operating room table. Current accepted standards in the [operating room] do not put the entire burden of culpability on one person and instead focuses on a team approach where there is no hierarchy and any member of the team is expected to speak up if they feel there is something wrong.

- During my fellowship at Northwestern University, I was taught the "team approach" to surgery, which is how I and the majority of Colorado surgeons practice today. This approach thrives on checklists and division of labor, where the surgeon is no longer the sole authority in the [operating room]. . . . From a review of the deposition testimony given in this case, it appears that Dr. Bordelon and Penrose Hospital has adopted some form of the surgical checklist and the team approach.

- In general, it is the role of the operating room nurse or nurses to position and secure the patient before any procedure. The surgeon typically is not present in the [operating room] when this happens. The standard of care does not require the surgeon to personally verify that the nurses did their job correctly. A surgeon expects his/her [operating room] nurses to be properly trained in preparing and securing patients to the [operating room] table.

- During many surgical procedures, a surgeon may need to change the position of the [operating room] table in order to facilitate the operation. Nursing staff should know that an operating room table for a robotic or laparoscopic case is likely to be adjusted during surgery and should position/secure the patient accordingly.

- Dr. Bordelon acted within the standard of care when he reasonably relied upon the [operating room] nursing staff to properly secure and position Mr. Stricklin for surgery. . . . To the extent the patient was negligently secured to the

2

operating room table, that fault lies with the nursing staff.

(ECF No. 72-3.)

**B.     Dr. Chambers and Dr. Conn**

Likewise, Dr. Chambers and Dr. Conn are described as "surgeon[s] licensed to practice medicine in Colorado." (ECF No. 72-1 at 12, 14.) Among other things, both Dr. Chambers and Dr. Conn plan to testify as follows:

- "[I]t is well known by health care providers involved in surgery that nursing staff is responsible for positioning and securing a patient to the [operating room] table" and that "[s]urgeons rarely, if ever, double check the nurses' work."

- "The standard of care does not require surgeons to double check that nurses have appropriately positioned and secured a patient to the [operating room] table."

- "[N]ursing staff should anticipate that the [operating room] table likely will be moved during surgery, especially if laparoscopic or robotic," that "[operating room] nurses know (or should know) that one of the first maneuvers to address low blood pressure during surgery is to adjust the table to a Trendelenburg position," that "[operating room] nurses at Penrose should easily realize when an [operating room] table is being adjusted and should speed up if they have any concerns about patient safety with such adjustments."

- "[A]ny suggestion that a surgeon is responsible when nursing inadequately secures a patient to the [operating room] table because they should either double check nursing work or because they did not spell out possible table adjustments is illogical and highly inconsistent with how these issues are handled at Penrose."

(ECF No. 72-5 at 1–2; ECF No. 72-7 at 1.)

## II. ANALYSIS

Plaintiff argues that because Defendant, Dr. Modanlou, Dr. Chambers, and Dr. Conn are surgeons, the Court should "limit their testimony to the standard of care

3

applicable to a surgeon, and preclude these surgeons from testifying regarding the standard of care applicable to nurses" on the basis that surgeons are not qualified in the field of nursing. (ECF No. 72 at 1.)

**A.    Legal Standard**

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). Opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Expert testimony should be liberally admitted under Federal Rule of Evidence 702, *see United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995), and the trial court has broad discretion in deciding whether to admit or exclude such testimony, *see Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 647 (10th Cir. 1991).

"Expert testimony, like any other evidence, is subject to exclusion if it fails the Fed. R. Evid. 403 balancing test." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994); *see* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence.").

**B.   Analysis**

Plaintiff does not challenge whether Defendant, Dr. Modanlou, Dr. Chambers, and Dr. Conn are qualified to testify regarding the standard of care applicable to surgeons; instead, he argues that "these surgeons are not nurses, do not have training or experience in the field of nursing according to their own reports and CVs, and therefore should not be permitted to testify regarding the nursing standard of care." (ECF No. 72 at 3.)

Defendant responds that his experts are qualified to testify as to the standard of care for nurses working in the operating room because they possess "sufficient, if not overwhelming, knowledge and experienced to testify regarding the roles, responsibilities, and expectations (*i.e.* standard of care) of operating room nurses in connection with securing patients to the operating room table."  (ECF No. 74 at 3, 5.) He further argues that Plaintiff has *also* endorsed a surgeon as an expert witness to "explain the roles of the surgeon and [operating room] nurses in positioning and securing a patient to the [operating room] table" and that "it would be fundamentally unfair and unduly prejudicial under [Federal Rule of Evidence 403] for allow Plaintiff to offer testimony from his surgery expert and Penrose nursing staff about responsibility for positioning while at the same time precluding testimony from Defendant's surgery experts to rebut that evidence."  (ECF No. 74 at 8–9 (quoting ECF No. 74-1 at 6).)  The Court agrees.

Colorado Revised Statute § 13–64–401 sets the qualifications for expert witnesses in medical malpractice actions against physicians:

> No person shall be qualified to testify as an expert witness concerning issues of negligence in any medical malpractice action or proceeding against a physician unless he not only is a licensed physician but can demonstrate by competent evidence that, as a result of training, education, knowledge, and experience in the evaluation, diagnosis, and treatment of the disease or injury which is the subject matter of the action or proceeding against the physician defendant, he was substantially familiar with applicable standards of care and practice as they relate to the act or omission which is the subject of the claim on the date of the incident. The court shall not permit an expert in one medical subspecialty to testify against a physician in another medical subspecialty unless, in addition to such a showing of substantial familiarity, there is a showing that the standards of care and practice in the two fields are similar. The limitations in this section shall not apply to expert witnesses testifying as to the degree or permanency of medical or physical impairment.

Nothing in this statute renders a physician incompetent *per se* to provide testimony regarding nursing standards. *See Melville v. Southward*, 791 P.2d 383, 388–89 (Colo. 1990) (en banc) (recognizing that it is possible for an expert medical witness to testify regarding whether a defendant that practices in another school of medicine to adhere to or deviated from the requisite standard of care). Likewise, the Tenth Circuit has recognized that an expert "should not be required to satisfy an overly narrow test of his own qualifications." *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974).

Defendant and his expert witnesses, by virtue of their own training and experience as surgeons, are not necessarily experts regarding all matters involving nursing standards of care. Although they often work together in a symbiotic relationship, nurses and surgeons each have their own standards and idiosyncrasies. Surgeons undoubtedly do not have the requisite training and experience to testify

6

regarding the standard of care for all areas of nursing. Nonetheless, the Court cannot conclude that Defendant, Dr. Modanlou, Dr. Chambers, and Dr. Conn should be barred from discussing their expectations and understandings of a nurse's standard of care *within an operating room setting*.

Defendant and his experts have decades of experience working in an operating room and conducting surgeries. (*See, e.g.*, ECF No. 72-4 (Dr. Modanlou has been board certified since 2006); ECF No. 72-6 (Dr. Conn has been board certified since 1993); ECF No. 72-8 (Dr. Chambers has been board certified since 1988).) They have expectations derived from their extensive surgical experience as to how an operating room should be run and how responsibilities are divided. From that experience, their testimony regarding nursing responsibilities within an operating room setting would assist the trier of fact in understanding the evidence. They may have less experience regarding the standard of care for nurses within an operating room than surgical nurses, but they nonetheless have substantially more expertise on this topic than a layperson, and their testimony would not be speculative. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Loyd v. United States*, 2011 WL 1327043, at *5 (S.D.N.Y. Mar. 31, 2011) (recognizing that an expert "need not be a specialist in the exact area of medicine implicated by the plaintiff's injury, [but] he must have relevant experience and qualifications such that whatever opinion he will ultimately express would not be speculative" (internal citations and quotation marks omitted)).

Considering their extensive surgical training and experience, Defendant, Dr.

7

Modanlou, Dr. Chambers, and Dr. Conn are qualified to testify regarding nursing responsibilities within an operating room setting.  *Cf. Griffey v. Adams*, 2018 WL 3447700, at *7 (W.D. Ky. July 17, 2018) (denying motion to exclude surgeon's testimony regarding exposure to general anesthesia where surgeon has extensive experience in operating room where general anesthesia is commonly administered); *Petrancosta v. Malik*, 2015 WL 12516203, at *6 (M.D. Pa. Jan. 27, 2015) (finding spinal surgeon is qualified to opine as to a nurse's standard of care as it pertains to the treatment of trauma patients with possible spine injuries based on "his interaction with, direction over, and reliance upon the activities of hospital nurses").  Plaintiff's objections to the surgeons' qualifications go more to the weight of their expertise than their qualifications, and any perceived insufficiencies in the surgeons' qualifications may be adequately addressed on cross examination.

\* \* \* \*

The Court pauses to make one final observation.  As set forth above, Dr. Modanlou, Dr. Chambers, and Dr. Conn each plan to testify about, among other things, a nurse's responsibilities during surgical procedures.  (ECF Nos. 72-3, 72-5, 72-7.)  Under Rule 403, the marginal probative value of allowing such duplicative testimony from three expert witnesses is substantially outweighed by a danger of needlessly presenting cumulative evidence.  Accordingly, exercising its authority under Federal Rule of Evidence 611 to control the introduction of evidence and avoid duplicative testimony, Defendant will be given the option to choose only one expert to opine on a nurse's standard of care within the operating room setting.[1]  However, the Court will not

---

[1] To the extent Plaintiff has also endorsed multiple expert witnesses to opine on this

preclude Defendant's expert witnesses from testifying regarding other non-cumulative matters.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS that Plaintiff's Motion to Limit Defendant's Expert Opinions Pursuant to F.R.E. 702 (ECF No. 72) is DENIED.

Dated this 26th day of April, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

subject, Plaintiff is advised that he may also only present one expert on this subject at trial.